IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTWON ROGERS, et al )
        Plaintiffs ) C.A. No. 08-149 Erie
)
v. ) **District Judge McLaughlin**
) **Magistrate Judge Baxter**
UNITED STATES OF AMERICA, et al., )
        Defendants. )


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 85] be granted. The Clerk of Courts should be directed to close this case.


**II.    REPORT**

    **A.    Relevant Procedural History**

On May 15, 2008, Plaintiffs Antwon Rogers, Andre Campbell and Desmond Singh, Sunni Muslims incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* civil rights action. In the Original Complaint, the three individual Plaintiffs alleged statutory, constitutional and tort claims related to the alleged denial of Halal meat for the celebration of the Eid-ul-Adha feast on January 10, 2006.[1] Plaintiffs also challenged the

---

[1] Keith Ellis, a former federal inmate, filed a lawsuit with claims identical to those raised in the present action involving the January 2006 Eid-ul-Adha celebration at FCI-McKean. See Ellis v. United States of America, et al, Civil Action No. 08-160E. Additionally, Plaintiffs Singh and Rogers, along with several other Sunni Muslim inmates, filed nearly identical claims in a previous lawsuit involving the January 2005 Eid celebration. That case was dismissed on February 23, 2009. See Ellis, et al v. United States of America, et al, Civil Action No. 06-305Erie.

1

prison's policy of selling scented oils used in Muslim prayer services through the Commissary, rather than through the special purchase order program. Plaintiffs asserted statutory claims under the Federal Tort Claims Act, the Religious Land Use and Institutionalized Persons Act, and the Religious Freedom Restoration Act, as well as *Bivens* claims under the First and Fifth Amendments. Plaintiffs Rogers and Singh also raised a retaliation claim. ECF No. 9, Original Complaint.

Originally named as Defendants were the following: the United States of America; Edward Roberts, the Federal Bureau of Prison's Northeast Regional Religious Service Administrator; James Sherman, former Warden of FCI McKean; S.L. Robare, Assistant Warden at FCI McKean; Jan C. Olowin, former Supervisory Chaplain at FCI McKean; Brian Grimm, Chaplain at FCI McKean; Gerald Desio, Food Service Supervisor at FCI-McKean; and Michael Baldensperger, Trust Fund Supervisor at FCI McKean. Plaintiffs sought nominal and punitive damages from Defendants.

According to the Amended Complaint, in early October of 2005, Plaintiffs and other Sunni Muslim inmates at FCI McKean ("Sunni inmates") submitted an Inmate Request to Defendant Grimm requesting that Halal lamb be served at their Eid-ul-Adha ("Eid") celebration in January 2006. ECF No. 41, Amended Complaint, page 13.

Plaintiffs submitted a second request to Defendants Grimm and Olowin, dated November 10, 2005, requesting to have Halal beef, rather than Halal lamb, served at the Eid celebration, since the beef was available on the Institutional and/or Certified Menu. ECF No. 41, page 3. The next day, Plaintiffs and others met with Defendants Olowin and Grimm, at which time the Defendants allegedly agreed to have Halal beef served at the Eid celebration, and further agreed to ensure that all participating inmates were on the Religious Diet Program for the day of the Eid-ul-Adha observance. Id. at 14.

On November 18, 2005, Plaintiffs again met with Defendants Olowin and Grimm to discuss the January 2006 Eid observance, at which time Defendant Olowin allegedly informed Plaintiffs that Halal beef was approved for the ceremonial meal. Id. Further, Defendant Olowin allegedly told the group that the Halal beef had already been "purchased and provided

for by the food service budget." Id. However, on January 10, 2006, the day the Eid observance was scheduled to be held, Plaintiff alleges that "the Defendants refused to provide an appropriate religious dietary meal (Halal beef...) as promised and attempted to coerce and force Plaintiffs and others into rescheduling the Eid and into accepting a non-Halal meal." Id.

Plaintiffs also alleged that around June of 2006 Religious Services stopped purchasing and providing prayer oil for purchase by inmates through the SPO program. ECF No. 41, pages 16-17. Plaintiffs claim that the denial of the Halal meat for the Eid celebration and the discontinuation of prayer oil in the SPO program were acts of retaliation against them based upon their involvement as litigants in Civil Action 06-305E. Id. See also ECF No. 56, Plaintiffs' Opposition Brief, page 14.

Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment. ECF No. 52. In January of 2010, I issued a Report and Recommendation which recommended that the dispositive motion filed by Defendants be:

> 1) granted as to the *Bivens* and RFRA/RLUIPA claims of all Plaintiffs regarding prayer oils due to their failure to exhaust in accord with the PLRA;
>
> 2) granted as to all the *Bivens* and RFRA/RLUIPA claims relating to the Eid meal in January of 2006 by Plaintiff Campbell as he has failed to exhaust in accord with the PLRA;
>
> 3) granted as to the RLUIPA claims of all Plaintiffs;
>
> 4) granted as to the RFRA claims of all Plaintiffs;
>
> 5) denied as to the *respondeat superior* argument as to Defendants Sherman and Robare;
>
> 6) denied as to the First Amendment free exercise claim;
>
> 7) denied as to the Fifth Amendment equal protection claim;
>
> 8) granted as to the substantive due process claim under the Fifth Amendment;
>
> 9) granted as to the procedural due process claim under the Fifth Amendment;

3

> 10) denied as to the qualified immunity defense of all individual Defendants;
>
> 11) granted as to the dismissal of the FTCA claims against the individual Defendants; and
>
> 12) granted as to the FTCA claim against the United States.

Further, I recommended that the Clerk of Courts be directed to terminate Plaintiff Campbell and the United States of America as parties to this action.[2]  ECF No. 57.  District Judge McLaughlin adopted the Report and Recommendation as the opinion of the Court.  ECF No. 58.  Following the decision on the dispositive motion, only the Free Exercise, Equal Protection and retaliation claims remained.  Thereafter, the Clerk of Courts took several months seeking counsel for Plaintiffs Rogers and Singh, and an intense period of discovery ensued.

Presently pending before this Court is a motion for summary judgment filed by Defendants.  ECF No. 85.  Plaintiffs, now represented by counsel, have filed an Opposition Brief [ECF No. 94]; Defendants have filed a Reply Brief [ECF No. 98]; and Plaintiffs have filed a Surreply Brief [ECF No. 101].  The pending motion is ripe for disposition by this Court.

### B. Standard of Review - Motion for summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891

---

[2]  I also noted that the retaliation claims of Plaintiffs Singh and Rogers remained pending as Defendants had not moved for summary judgment on those claims.

F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

    **C.    Qualified Immunity**

Initially, Defendants move for summary judgment on the First and Fifth Amendment claims based upon the doctrine of qualified immunity. The current motion for summary judgment is Defendants' second request for qualified immunity. In the previous Report and Recommendation, I concluded that the legal precedent regarding a plaintiff's First Amendment

5

right to the Free Exercise of religion, as well as the right to Equal Protection under the Fifth Amendment, were clearly established at the time of the Defendants' alleged actions in January of 2006.  ECF No. 57, page 38-39.  Defendants urge this Court to reexamine its prior determination in this regard claiming that the previous analysis defined the contours of the constitutional rights too broadly.  ECF No. 87.  Plaintiffs only summarily address this qualified immunity argument in their Opposition Brief, arguing that this Court previously decided that Defendants were not entitled to qualified immunity and this issue should not be revisited.  ECF No. 94, page 6.  However, because this Court has "the power to revisit prior decisions of its own … in any circumstance," and in light of the intensive period of fact discovery which has occurred since the filing of the first dispositive motion, the issue will be reviewed again here.  See Christian v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988).

The party asserting the defense of qualified immunity bears the burden of establishing it.  See Harlow, 457 U.S. at 819.  "When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication."  Ortiz v. Jordan, ___ U.S. ___, ___, 131 S.Ct. 884, 889 (Jan. 24, 2011).

The doctrine of qualified immunity insulates government officials from liability for damages[3] insofar as their conduct does not violate clearly established rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In other words, "qualified immunity shields government officials from suit even if their actions were unconstitutional as long as those officials' action did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Burns v. Pennsylvania Department of Corrections, ___ F.3d ___,

---

[3] The defense of qualified immunity only applies to damages and not to requests for injunctive relief.  Burns, 2011 WL 1486075, at *12 ("Although qualified immunity bars Burns from seeking monetary compensation, he may still be entitled to injunctive relief.  See Harris v. Pernsely, 755 F.2d 338, 343 (3d Cir. 1985).").  In this case, Plaintiffs have not sought injunctive relief.  See ECF No. 41, Amended Complaint.

___, 2011 WL 1486075, at * 9 (3d Cir. April 20, 2011) quoting Harlow, 457 U.S. at 818. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." Burns, at *9, quoting Pearson v. Callahan, 555 U.S. 223, ___, 129 S.Ct. 808, 815 (2009). See also Hope v. Pelzer, 530 U.S. 730, 739 (2002) ("Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.").

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). The Third Circuit summarized that framework as follows:

> The [Supreme] Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? Saucier, 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. See id. In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id.

Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). See also Doe v. Delie, 257 F.3d 309 (3d Cir. 2001). The rigid two-step inquiry set forth in Saucier was later relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. 223 (2009). See also Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). As the Pearson Court explained: "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." 555 U.S. at ___, 129 S.Ct. at 821. See also DeLauri v. New Jersey Div. of State Police, 2009 WL 222983, at *5 (D.N.J. 2009) ("[C]ourts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Accordingly, in the spirit of Pearson and its progeny, this Court will proceed straight to the second prong of the Saucier analysis – whether the right was "clearly

7

established."

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Curley, 298 F.3d at 277, quoting Saucier, 533 U.S. at 201. In order for an official "to have 'fair warning' […] that his or her actions violate a person's rights, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Burns, at *9, quoting United States v. Lanier, 520 U.S. 259, 270 (1997) and Anderson v. Creighton, 483 U.S. 635, 640 (1987).[4] For a right to be clearly established, the Third Circuit has instructed that "'there must be sufficient precedent at the time of the action factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited.'" McKee v. Hart, 436 F.3d 165, 171 (3d Cir. 2006) quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001).

Here, on this motion for summary judgment, the inquiry is whether a prison official in January of 2006 would have had "fair warning" that denying Plaintiffs Halal meat for their Eid celebration violated their constitutional rights under the First and Fifth Amendments?

Prior to January of 2006, the Third Circuit considered constitutional challenges to prison officials' failure to accommodate the dietary restrictions of Sunni Muslims and Buddhists, and held that both challenged food policies passed constitutional muster. In Williams v. Morton, Muslim inmates challenged prison officials' failure to provide them with Halal meals on a daily basis. 343 F.3d 212 (3d Cir. 2003). The Circuit conducted a thorough reasonableness analysis under Turner v. Safley, 482 U.S. 78 (1987)[5], and concluded that the prison officials did not

---

[4] The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 556 (2004).

[5] The Turner v. Safley reasonableness analysis focuses on four factors: 1) whether there is a legitimate rational connection between the prison regulation and the governmental interest; 2) whether the prisoners have alternative means of exercising the constitutional right at hand; 3)the

8

violate plaintiffs' First and Fifth Amendment rights. 343 F.3d 212. Similarly, in DeHart v. Horn, 390 F.3d 262 (3d Cir. 2004), a Mahayana Buddhist inmate alleged that his constitutional rights were violated by prison officials' refusal to provide him with a religiously appropriate diet. Again, the Third Circuit conducted a thorough reasonableness analysis under Turner and concluded that the decisions of the prison officials were not violative of the First or Fifth Amendments. Id. This is in keeping with the decisions from around the country: "[T]he majority of circuit and district courts that have looked at this specific issue have concluded there is no such clearly established right to Halal meals, with or without Halal meat, under the First Amendment's Free Exercise of Religion Clause, RLUIPA or the Equal Protection Clause of the Fourteenth Amendment." Thompson v. Williams, 2007 WL 3244666 at *22 (W.D.Wash. Oct. 31, 2007)(granting defendants qualified immunity), citing, *inter alia*, Williams v. Morton, 343 F.3d 212, 216-22 (3d Cir. 2003); Cochran v. Schotten, 172 F.3d 47 (6th Cir. 1998); Bilal v. Lehman, 2006 WL 3626808 at *6-7 (W.D.Wash. Dec. 8, 2006)(finding lack of clearly established law regarding Muslim inmate's right to a diet specifically including Halal meat); Hudson v. Malony, 326 F.Supp.2d 206, 211-214 (D.Mass 2004)(officials who did not provide Halal meat as part of Muslim diet entitled to qualified immunity). See also Pratt v. Corr. Corp. of America, 267 Fed.Appx. 482 (8th Cir. 2008)(prison not required to provide diet with Halal meat where other Halal food was provided); Patel v. United States Bureau of Prisons, 515 F.3d 807 (8th Cir. 2008)(BOP not required to provide Halal meals); Jihad v. Fabian, 2011 WL 1641885 at *15 (D.Minn. Feb. 17, 2011)(finding no clearly established right to prepackaged Halal meals based on religious beliefs); Lewis v. Ryan, 2008 WL 1944112 at *31 (S.D.Cal. May 1, 2008) (defendants entitled to qualified immunity because Muslim inmate's right to be served Halal meals was not clearly established).

So then, in January 2006, FCI-McKean officials could have reasonably believed that Plaintiffs had no constitutional right to Halal meat for their Eid celebration. See Guiffre v.

---

impact that accommodation of the constitutional right would have on other prisoners, guards, and prison resources in general; and 4) the availability of alternatives to the regulation. 482 U.S. 78, 89-90 (1987) reaffirmed in Overton v. Bazzetta, 539 U.S. 126, 131 (2003).

Bissell, 31 F.3d 1241, 1255 (1994) ("The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officers in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful."). In the prior Report and Recommendation on Qualified Immunity, the analysis was solely on the broad parameters of First and Fifth Amendment jurisprudence. At that early point in the litigation, the Court did not specifically discuss Defendants' actions in light of the cases cited above. Although the specific fact pattern here -- prior approval followed by last minute denial – is unlike any prior case, it cannot be said that Defendants were unreasonable in their belief that the Constitution does not require provision of Halal beef for this feast in light of these cases, both in this circuit and across the country.

This is especially true following the most recent Supreme Court case on qualified immunity where the high court stressed that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, ___ U.S. ___, ___ S.Ct. ___, 2011 WL 2119110 (U.S. May 31, 2011). This recent reminder of the purpose and spirit of the qualified immunity doctrine solidifies the decision to apply the doctrine to Defendants here. To rule otherwise is to deny Defendants the "breathing room" required by the al-Kidd case. As the Supreme Court also noted in that case, "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986). Neither describes the actions of the Defendants in this matter in light of the case law on the subject. Accordingly, Defendants are entitled to qualified immunity in relation to the First and Fifth Amendment claims. The motion for summary judgment should be granted in this regard.

### D. Retaliation

Defendants move for summary judgment arguing that the evidence does not support

Plaintiffs' two *prima facie* claims of retaliation.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). See also Anderson v. Davila, 125 F.3d 48, 161 (3d Cir. 1997) ("An otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment rights.").

In order to state a *prima facie* case of retaliation, it is a prisoner plaintiff's burden to demonstrate that:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the retaliatory action.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). See also Holbrook v. Walters, 296 Fed. Appx 230, 233 (3d Cir. 2008).

Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser,

11

241 F.3d at 334.

### 1) Prayer Oils

Plaintiffs allege that prayer oil was not provided through the Special Purpose Order Program around September of 2006 in retaliation for Plaintiffs' pursuit of "administrative and judicial remedies concerning the 2005 and 2006 Eid-ul-Adha celebration." ECF No. 41, page 17.

Counsel for Plaintiffs has not laid out their *prima facie* case of retaliation or provided any evidence in this regard. Instead, Plaintiffs' argument in opposition to the pending motion for summary judgment on this issue is one paragraph long and does not apply the three-prong Carter test.[6] However, in the interests of fairness, this Court feels compelled to take notice of the exhibits provided by the parties in support of the previous dispositive motions. See Fed.R.Civ.P. 56(c)(3) ("Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.").

Plaintiffs Rogers and Singh pursued their administrative remedies following the denial of the January 2006 Eid celebration.[7] Rogers filed an administrative remedy on February 23, 2006 (#403244) and pursued it through final denial on May 25, 2006, while Singh filed an

---

[6] Plaintiffs' entire argument in opposition to the Defendants' analysis on the retaliation claims reads: "There is clearly a time contingency involved here as Defendants' Brief does note. The Defendants had pursued their administrative remedies and made their demands for halal meats but not apparently for the oils. Whether or not the facts asserted in Plaintiffs' Own Concise Statement and its foregoing Response to Defendants' Concise Statement show the state of mind that would assist the trier of fact to demonstrate to it that the withholdings were retaliatory action is at issue. The animus appears to be hostile and retaliatory. If so, the burden is now upon Defendants to demonstrate otherwise." ECF No. 94, page 13-14. Plaintiffs do not address this issue in their Surreply Brief. ECF No. 101.

[7] This Court takes judicial notice of the fact that Plaintiffs Rogers and Singh were parties to the earlier litigation which challenged the actions of the FCI-McKean staff in relation to the 2005 Eid celebration. However, that lawsuit was not filed until December of 2006, well after the January 2006 Eid celebration and so cannot serve as the constitutionally protected conduct for the allegedly retaliatory acts that occurred in January of 2006.

administrative remedy on February 7, 2006 (#402577) and pursued it through final denial on June 20, 2006. See ECF No. 53-1, Declaration of Vanessa Herbin-Smith, Supervisory Paralegal Specialist, Federal Bureau of Prisons, Northeast Regional Office, pages 1-5. The filing of grievances is constitutionally protected activity in order to satisfy the first prong of the retaliation case. See Robinson v. Taylor, 204 Fed. Appx 155, 157 (3d Cir. 2006) citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) and Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003).

It is the second prong that provides difficulty for Plaintiffs -- Plaintiffs cannot meet the adverse action prong of the *prima facie* retaliation claim. To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225. Here, Defendants have provided evidence that the prayer oils were **always** available to Plaintiffs for purchase through the Commissary rather than the Special Purchase Order program. ECF No. 86-6, Declaration of Jan Olowin, D.Min., Chief Chaplain at FCI-McKean, page 8. As reported above, Plaintiffs do not posit an argument that follows the Carter test, but it appears that their claim is not that the oils were unavailable, but were increased in price. Plaintiffs have not explained or produced any evidence that any price increase between the prayer oils sold through the Commissary rather than sold through the SPO program adversely affected them so as to deter a person of ordinary firmness from exercising his constitutional rights. This is fatal to their claims in this regard. See Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (the non-movant cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained within the pleadings.).

Accordingly, summary judgment should be granted in favor of Defendants on this portion of the retaliation claim.

2) **Denial of Halal Meat for January 2006 Celebration**

13

Plaintiffs allege that the Halal meat was denied in retaliation for "pursuing administrative and judicial remedies concerning the last Eid-ul-Adha in 2005 and other matters" (ECF No. 41, page 12) and "pursuing Administrative and judicial remedies concerning the 2005 and 2006 Eid-ul-Adha celebrations and other matters concerning Plaintiffs' religious exercise" (id. at page 15). Defendants move for summary judgment claiming that Plaintiffs have failed to demonstrate their *prima facie* case of retaliation. Again, Plaintiffs' opposition does not address this argument.

Even assuming for purposes of this motion that Plaintiffs had demonstrated a *prima facie* case of retaliation, Defendants are entitled to summary judgment here.

Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158; Rauser, 241 F.3d at 334. Here, Defendants have consistently maintained that the decision to deny Halal meat for the Eid celebration was an attempt to limit expenditures in the face of budgetary constraints. See ECF No. 57, Report and Recommendation, page 25.[8] Limiting expenditures is a valid penological interest. See Williams, 343 F.3d 212; Hall v. Ekpe, 408 Fed.Appx 385, at *2 (2d Cir. 2010) (recognizing "minimizing unnecessary expenses" as a valid penological interest). Further, Defendants argue that the decision made in January 2006 was the continuation of the same decision from the previous year. ECF No. 86-6, Declaration of Jan Olowin, Chief Chaplain of FCI-McKean, ¶ 8. Therefore, Defendants have provided evidence that the decision was made "absent the protected conduct, for reasons reasonably related to a legitimate penological interest" and Plaintiffs have pointed to no evidence to the contrary.

Accordingly, summary judgment should be granted in favor of Defendants as to this portion of the retaliation claim.

---

[8] Citing ECF No. 53, Defendants' Motion to Dismiss and 53-7; Declaration of Jan Olowin, Chief Chaplain at FCI-McKean, page 5; and 53-10, "Update" from Chaplaincy Services dated August 2004, page 2.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 85] be granted. The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, ___ F.3d ___, 2011 WL 635274, at *4 n.7 (3d Cir. Feb. 9, 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

                                            S/Susan Paradise Baxter
                                            SUSAN PARADISE BAXTER
                                            UNITED STATES MAGISTRATE JUDGE

Dated:        June 17, 2011